## BRYSON et ux. v. FULLER et al.
### (No. 3114.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 12, 1925. Rehearing Denied Jan. 7, 1926.)

**1. Mines and minerals ⬛➎58—Oil and gas lease held supported by consideration.**

Oil and gas lease, reciting consideration of $1, and requiring lessees to commence drilling operations before a certain date, and requiring payment of royalties and furnishing of gas without charge for certain purposes, *held* supported by consideration.

**2. Mines and minerals ⬛➎59—Lessors not entitled to rescind oil and gas lease for failure of lessees to pay further consideration.**

Where oil and gas lease was supported by ample consideration, that lessees, as a further consideration, promised to pay lessors an additional sum, and failed to do so, *held* not to entitle lessors to rescind but only to damages.

**3. Tender ⬛➎22—Court cannot compel lessees to pay into court amount alleged in pleadings to be due.**

In suit to cancel oil and gas lease for alleged failure to pay consideration, that lessees offered, in their pleadings, to pay into court amount which they alleged lessors were entitled to, *held* not to authorize court to compel payment into registry of court, but only to strike out plea of tender as insufficient.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by James M. Bryson and wife against F. A. Fuller and others. From the judgment, plaintiffs appeal. Affirmed.

This suit (commenced and prosecuted by appellants as plaintiffs against appellees F. E. Fuller, A. C. Scott, F. M. Fuller, J. L. Ford, the Shreveport Producing & Refining Company, a corporation, and the Mid-Kansas Oil & Gas Company, also a corporation, as defendants) was to cancel a written instrument dated October 5, 1923, purporting to be a lease by appellants to said F. A. Fuller (for a term of five years) of 100 acres of land in Harrison county, "for the sole and only purpose," it was recited, "of mining and operating for oil, gas, coal, lignite, sulphur, and other minerals, and of laying pipe lines and building tanks, power stations, and structures thereon to produce, save, and take care of said products."

The grounds upon which appellants sought to cancel the instrument were: (1) That they did not execute it. (2) That, if they did execute it, they never delivered it, but placed it as an escrow with the cashier of a bank in Waskum, to be delivered when $2,124 was paid to the cashier for them. They alleged that the lessee did not pay said sum or any sum to the cashier for them, and that he (the cashier) wrongfully, without their knowledge or consent, delivered the instrument to the lessee. On special issues submitted to the jury they found that appellants did execute the instrument, and did not place it as an escrow with the cashier of the bank.

It appeared from testimony heard at the trial that at the time appellants executed the lease to F. A. Fuller, above referred to, they also executed one to appellee A. C. Scott, for like purposes, on 184 acres of land in the state of Louisiana, but near to, if not adjoining, said 100 acres in Texas. The consideration for the lease of the 184 acres to Scott, according to recitals in the instrument evidencing it, was similar to that hereinafter mentioned as the consideration recited therein for the lease of the 100 acres to F. A. Fuller, with this addition, that by the terms of the lease to Scott he was to purchase one-half of the mineral rights of appellants in the 184 acres of land, and to pay them therefor the sum of $10 per acre. Appellants insisted in their pleadings that the two leases were parts of one and the same transaction, and that the consideration to be paid to them on account thereof was $1 an acre, or $284, for the 284 acres, and $10 an acre, or $1,840, for one-half of royalties they might become entitled to by the terms of the instrument evidencing the lease of the 184 acres; and they alleged that no part of said sums, aggregating $2,124, had been paid to them. Appellees in their pleadings denied that they were to pay $1 an acre, or any sum of money, as a consideration for the lease of the land to them, but alleged that "they did agree or that the defendant F. E. Fuller did agree, as a part of the same transaction, to buy one-half of certain mineral rights of the plaintiff J. M. Bryson, and to pay him therefor in cash the amount of $1,840 for the said 184 acres in Louisiana, leased about the same time; that they have repeatedly offered to do and perform that part of said agreement and are now ready to do so. If the said plaintiff will indicate a willingness to receive the same, they will pay it into this court or over to the plaintiffs upon the execution of the proper transfer and acquittal."

The appeal is from a judgment denying appellants the relief they sought and in appellees' favor for costs.

Prendergast & Prendergast, of Marshall, for appellants.

Davidson, Blalock & Blalock and Hall, Brown & Hall, all of Marshall, for appellees.

WILLSON, C. J. (after stating the facts as above). The contention presented by the first assignment is that the trial court erred when he refused appellants' request that he submit to the jury special issues as follows: "(1) What was the consideration for the lease

of the Texas property? (2) Has that consideration been paid?"

We think the contention should be overruled. According to recitals in the instrument evidencing the lease of the 100 acres in Harrison county, the consideration therefor to appellants was $1 paid to them and the undertaking of the lessee (1) on or before February 1, 1924, to commence operations for the "drilling of an oil well or gas well on the land or other land within ―――― miles of same"; (2) to deliver to appellants free of cost to them "one-eighth part of all oil produced and saved from the leased premises"; (3) to pay the lessors "$200 each year in advance for the gas from each well where gas was found while same was being used off the premises," and permit them to use without charge therefor gas from such well for lights and fuel in the dwelling house on the land; and (4) to pay the lessors "for gas produced from any oil well and used off the premises at the rate of $200 per year for the time during which such gas was used," and "one-eighth of the net proceeds derived from the sale of casing head gas utilized in making gasoline."

Appellants did not allege in their pleadings, nor at the trial offer to prove, that the lessee of the 100 acres failed to comply with the undertakings, or any of them, specified, except that appellant Bryson as a witness testified that the dollar mentioned as having been paid to them was not in fact paid. But appellants did allege and undertake to prove that Scott verbally promised to pay them $2,124 for the lease of the 100 acres and a lease of the 184 acres in Louisiana, and that he did not do so.

It seems, therefore, that the request for the submission of the issues was on the theory that, if Scott promised to pay appellants $2,124 for the two leases and did not do so, it was such a failure of consideration as entitled them to rescind the contract covering the lease of the 100 acres, notwithstanding the lessee may have fully complied with all the undertakings on his part set out in the instrument evidencing that contract.

[1, 2] We think the theory was an erroneous one. In the light of the authorities, there is no doubt that the undertakings of the lessee, referred to as set out in the instrument evidencing the lease of the 100 acres, constituted a consideration amply sufficient to support the lease. Burt v. Deorsam (Tex. Civ. App.) 227 S. W. 354; 2 Thornton on Oil & Gas, § 70. That being true, the fact alone, if it was a fact, that the lessee or Scott as a further consideration for that lease and the one of land in Louisiana promised to pay appellants $2,124 and failed to do so did not entitle appellants to relief by rescission. Their remedy was a suit for damages—that is, to enforce the promise to pay them the $2,124. Railway Co. v. Titterington, 84 Tex.

218, 19 S. W. 472, 31 Am. St. Rep. 39; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051; Elliott v. Elliott, 50 Tex. Civ. App. 272, 109 S. W. 215, 1142; Ripley v. Wenzel (Tex. Civ. App.) 139 S. W. 897; Hardware Co. v. Oil Co. (Tex. Civ. App.) 189 S. W. 313; Harris v. Rather (Tex. Civ. App.) 134 S. W. 754; Greenameyer v. McFarlane (Tex. Civ. App.) 220 S. W. 613; Jackson v. Oil Co. (Tex. Civ. App.) 217 S. W. 959; 12 R. C. L. 254; 4 R. C. L. 500; 13 C. J. 612; 5 Pomeroy's Equity, § 2108.

[3] Another contention presented by the assignments is that the trial court erred "in not having (quoting) defendants to pay into court the $1,840 which the defendants had tendered in their pleadings," and in rendering judgment that appellants take nothing by their suit and that appellees "have a decree [quoting further] making a lease to the Texas land valid without requiring the defendants to place the money in the registry of the court as they had tendered in their pleadings." So far as the contention is that the court erred in not requiring appellees to pay the $1,840 tendered into the registry of the court, it is sufficient to say that the court was without power to compel appellees to do that. The most the court could have done would have been to strike out the plea of tender as insufficient because not accompanied by such a payment. And we think the contention is also without merit so far as it is that the court erred when he determined by his judgment that the lease was a valid one. The findings of the jury established that, if, as we have determined it is true, it did not appear that appellants were entitled to relief by rescission because of the failure of Scott or Fuller to pay the $2,124, and there was no reason why the court should not have so adjudicated in response to the prayer in appellees' answer to the suit.

The judgment is affirmed.